STATE OF NORTH CAROLINA v. JULIE ANNE YENCER

No. COA09-1

(Filed 17 August 2010)

**Constitutional Law— First Amendment—Establishment Clause—delegation of police power to religious institution**

The trial court erred by denying defendant's motion to dismiss the charge of driving while impaired because Davidson College is a religious institution for the purposes of the Establishment Clause. Thus, the delegation of police power to Davidson College, pursuant to N.C.G.S. § 74G, was an unconstitutional delegation of an important discretionary governmental power to a religious institution in the context of the First Amendment.

Appeal by defendant from judgment entered 1 August 2008 by Judge Jesse B. Caldwell, III, in Superior Court, Mecklenburg County. Heard in the Court of Appeals 18 August 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Hal F. Askins and Assistant Attorney General Tamara Zmuda, for the State.*

*Knox, Brotherton, Knox, & Godfrey, by Allen C. Brotherton, for defendant-appellant.*

WYNN, Judge.

"A state may not delegate an important discretionary governmental power to a religious institution or share such power with a religious institution."[1] Defendant Julie Anne Yencer argues that the trial court erred by denying her motion to dismiss because Davidson College is a religious institution to which a delegation of state police power is unconstitutional. Because we are bound by precedent in cases holding Campbell University and Pfeiffer University to be religious institutions,[2] we must likewise conclude that Davidson College is a religious institution for purposes of the Establishment Clause.

This appeal arises from the arrest of Defendant on 5 January 2006 by Officer Wesley Wilson of the Davidson College Police Department for driving while impaired and reckless driving on a street adjacent to campus. On 21 June 2006, Defendant pled guilty in district court to driving while impaired. On 27 June 2006, Defendant gave written notice of appeal to the superior court, where she filed a pretrial motion to suppress evidence procured as a result of Officer Wilson's stop and seizure of Defendant.

At the suppression motion hearing, evidence tended to show that all members of the Davidson College Police Department are commissioned as police officers by the Attorney General of North Carolina pursuant to N.C. Gen. Stat. § 74G (2009).[3] Under § 74G-2(a), "[a]s part of the Campus Police Program, the Attorney General is given the

---

1. *State v. Pendleton,* 339 N.C. 379, 386, 451 S.E.2d 274, 278 (1994) (citing *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 74 L. Ed. 2d 297 (1982)), *cert. denied, North Carolina v. Pendleton,* 515 U.S. 1121, 132 L. Ed. 2d 280 (1995).

2. *Pendleton,* 339 N.C. at 389, 451 S.E.2d at 280; *State v. Jordan,* 155 N.C. App. 146, 154, 574 S.E.2d 166, 171 (2002), *appeal dismissed, disc. review denied,* 356 N.C. 687, 578 S.E.2d 321 (2003).

3. In its Amended Order Denying Motion to Suppress, the trial court erroneously cited "N.C.G.S. § 74E" as the statute delegating the State's police power to the

authority to certify a private, nonprofit institution of higher education . . . as a campus police agency and to commission an individual as a campus police officer." The evidence further tended to show that Davidson College is affiliated with the Presbyterian Church of the United States of America. The trial court also considered evidence of Davidson's statement of purpose, and Davidson officials testified about the college's relationship with the Presbyterian Church and the particular religion-based requirements for students. Based on this evidence, Defendant contended that Officer Wilson's exercise of police power, as an employee of Davidson College, violated the excessive entanglement prohibitions of the Establishment Clause of the First Amendment to the United States Constitution[4] and Article I, Sections 13 and 19, of the North Carolina Constitution.[5]

After hearing the evidence, the trial court entered an order on 21 May 2007, denying Defendant's motion to suppress and concluding that "although Davidson College is religiously affiliated, it is not a religious institution within the meaning of the First Amendment." To correct a clerical error, an Amended Order Denying Motion to Suppress was filed on 29 May 2007. On 20 March 2008, the State moved for revision of the amended order to accurately reflect the particular statute providing Davidson College Police Department with the authority to make arrests. After a 2 April 2008 hearing, the trial court denied the motion by order filed 21 May 2008. On 1 August 2008, Defendant pled guilty to driving while impaired and reserved her right to appeal.

On appeal, Defendant argues that the evidence before the trial court indicated that Davidson College is a religious institution, and

---

Davidson College Campus Police. However, "[a] judgment under appellate review will stand if the correct result was reached, even though it was based on faulty reasoning." *Burton v. Blanton*, 107 N.C. App. 615, 617, 421 S.E.2d 381, 383 (1992) (citation omitted). Prior to 28 January 2005, members of the Davidson College Campus Police were delegated the State's police power pursuant to N.C. Gen. Stat. § 74E (2005). However, on 28 July 2005, the General Assembly of North Carolina enacted legislation which automatically converted certifications of police agencies at educational institutions issued pursuant to § 74E to certifications issued pursuant to § 74G unless the educational institution elected to continue certification under § 74E. *See* Act of July 28, 2005, 2005 N.C. Sess. Laws 531. Davidson College did not elect to continue certification under § 74E. Therefore, at the time of the arrest on 5 January 2006, Officer Wilson was commissioned as a police officer and delegated the state's police power pursuant to § 74G.

4. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

5. Although Defendant cited Sections 13 and 19 of Article I of the North Carolina Constitution in her motion to suppress, Defendant's brief does not address this issue. Therefore, pursuant to N.C. R. App. P. 28(b)(6) (2010), that issue is abandoned.

STATE v. YENCER

[206 N.C. App. 552 (2010)]

thus the delegation of state police power to Davidson's campus police force pursuant to § 74G constituted an unconstitutional delegation of state police power.[6]

To determine whether the delegation of state police power to Davidson College under § 74G violated the Establishment Clause of the First Amendment, we are guided by the three-pronged analysis undertaken by the Supreme Court of the United States in *Lemon v. Kurtzman*, 403 U.S. 602, 29 L. Ed. 2d 745 (1971), commonly referred to as the *Lemon* test. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an *excessive government entanglement* with religion." *Id.* at 612-13, 29 L. Ed. 2d at 755 (citations omitted) (emphasis added). A statute is unconstitutional if it fails to meet the requirements of any prong of the *Lemon* test. *Edwards v. Aguillard*, 482 U.S. 578, 583, 96 L. Ed. 2d 510, 518-19 (1987). Since neither of the first two prongs is at issue here, the question before us on appeal is whether the delegation of state police power to Davidson College, pursuant to §74G, runs afoul of the Establishment Clause by fostering an excessive government entanglement with religion.[7] *Lemon*, 403 U.S. at 613, 29 L. Ed. 2d at 755. Two earlier decisions, *State v. Pendleton*, 339 N.C. 379, 451 S.E.2d 274 (1994), and *State v. Jordan*, 155 N.C. App. 146, 574 S.E.2d 166 (2002), bind our determination of this issue.

In *Pendleton*, our Supreme Court held that § 74A (a predecessor of § 74G) unconstitutionally delegated state police power to a religious institution, Campbell University. 339 N.C. at 390, 451 S.E.2d at 281. Specifically, the Court noted that Campbell University's mission was to "[p]rovide students with the option of a Christian world view" and "[b]ring the word of God, mind of Christ, and power of the Spirit to bear in developing moral courage, social sensitivity, and ethical responsibility" as well as encourage creativity, provide a community of learning, and equip students with intellectual and professional

6. Here, while Defendant originally assigned error to several of the trial court's findings of fact, she did not bring those assignments forward in her brief. Therefore, Defendant's assignments of error regarding the findings of fact are abandoned pursuant to N.C. R. App. P. 28(b)(6) (2008).

7. Relying on *Larkin*, our courts have held that "a 'state may not delegate an important discretionary governmental power to a religious institution or share such power with a religious institution.'" *State v. Jordan*, 155 N.C. App. 146, 150, 574 S.E.2d 166, 169 (2002) (quoting *Pendleton*, 339 N.C. at 386, 451 S.E.2d at 278). Further, our Supreme Court has held that "police power is an important discretionary governmental power" that may not be delegated to a religious institution. *Pendleton*, 339 N.C. at 386, 451 S.E.2d at 279.

skills. *Id.* at 388, 451 S.E.2d at 279-80. The Court also referenced Campbell University's requirement that all undergraduates take at least one Judeo-Christian religion course, and its statement that it "is a Baptist university" whose purpose:

arises out of three basic theological and Biblical presuppositions: learning is appointed and conserved by God as essential to the fulfillment of human destiny; in Christ, all things consist and find ultimate unity; and the Kingdom of God in this world is rooted and grounded in Christian community.

*Id.* at 390, 451 S.E.2d at 281.

Similarly, in *Jordan*, the defendant was charged with driving while impaired by a member of the Pfeiffer University Police Department who was commissioned pursuant to a precursor to § 74G, § 74E. 155 N.C. App. at 147, 574 S.E.2d at 167. This Court upheld the trial court's decision that § 74E unconstitutionally delegated state police power to a religious institution, Pfeiffer University. *Id.* at 154, 574 S.E.2d at 171. In support of its decision, this Court noted the school's strong affiliation with the United Methodist Church, its requirement that at least six of its forty-four trustees be church members, the university's decision to close its administrative offices every Wednesday morning during chapel services and to allow course credit for student attendance, and Pfeiffer's mission to be "a 'model church related institution preparing servant leaders for life long learning[.]' " *Id.* at 153-54, 574 S.E.2d at 170-71.

Like Pfeiffer and Campbell Universities, Davidson College has a strong religious affiliation. As the trial court stated in its findings of fact:

8. Davidson College is affiliated with the Presbyterian Church of the United States of America (PCUSA). This affiliation is voluntary.

9. Davidson College's historical relationship with the Presbyterian Church is memorialized in the college's Statement of Purpose. In part, the Statement of Purpose reads:

Davidson College is an institution of higher learning established in 1837 by Presbyterians of North Carolina. Since its founding, the ties that bind the college to its Presbyterian heritage, including the historic understanding of Christian faith called The Reformed Tradition, have remained close and strong. The college is committed to this vital relationship . . . .

The Christian tradition to which Davidson remains committed recognizes God as the source of all truth, and believes that Jesus Christ is the revelation of that God, a God bound by no church or creed. *The loyalty of the college thus extends beyond the Christian community to the whole of humanity and necessarily includes openness to and respect for the world's various religious traditions.* Davidson dedicates itself to the quest for truth and encourages teachers and students to explore the whole of reality, whether physical or spiritual, with unlimited employment of their intellectual powers. At Davidson, faith and reason work together in mutual respect and benefit toward growth in learning, understanding and wisdom. (Emphasis Added)[.]

In keeping with its "Christian tradition," Davidson's governing body retains significant religious ties. According to the college's by-laws, "[t]he ownership, management and control of Davidson College are vested in the Trustees of the College[.]" Of the forty-four trustees, twenty-four must be active members of the Presbyterian Church and be confirmed by their Presbyteries. Additionally, eighty percent of Davidson's trustees must be active members of a Christian church.

Moreover, the by-laws require that the President of Davidson College, who is ordinarily the President of the Trustees as well as the Board's chief operating officer, is "a loyal and active church member, whose life provides evidence of strong Christian faith and commitment . . . appropriately expressed by affiliation with the Presbyterian Church (USA) and active participation in the life of Davidson College Presbyterian Church." Although Davidson students, faculty, and staff are not required to attend religious services or have a particular religious affiliation, students are required to take a course in religion and the College's by-laws limit faculty and officer appointments to "Christian men and women" and "non-Christian persons who can work with respect for the Christian tradition even if they cannot conscientiously join it and who can live in harmony with the purpose of the College[.]"

Bound by the analysis in *Pendleton* and *Jordan*, we are compelled to conclude that Davidson College is a religious institution for the purposes of the Establishment Clause. Accordingly, we hold that the delegation of police power to Davidson College, pursuant to §74G, is an unconstitutional delegation of "an important discretionary governmental power" to a religious institution in the context of the First Amendment. *Pendleton*, 339 N.C. at 386, 451 S.E.2d at 279.

In passing, we acknowledge if we were starting afresh, without the benefit or burden of precedent in *Pendleton* and *Jordan*, there is evidence in the record to show that Davidson College is not a religious institution for Establishment Clause purposes. As the Supreme Court of the United States noted in *Tilton v. Richardson*:

> There are generally significant differences between the religious aspects of church-related institutions of higher learning and parochial elementary and secondary schools. The 'affirmative if not dominant policy' of the instruction in pre-college church schools is 'to assure future adherents to a particular faith by having control of their total education at an early age.' There is substance to the contention that college students are less impressionable and less susceptible to religious indoctrination . . . . Furthermore, by their very nature, college and postgraduate courses tend to limit the opportunities for sectarian influence by virtue of their own internal disciplines. Many church-related colleges and universities are characterized by a high degree of academic freedom and seek to evoke free and critical responses from their students.

403 U.S. 672, 685-86, 29 L. Ed. 2d 790, 803 (holding the First Amendment was not violated by the Higher Education Facilities Act to the extent that it authorized monetary grants to church-related colleges and universities for the construction of facilities and buildings to be used for exclusively secular educational purposes) (internal citations and footnotes omitted).

Like the higher education institutions in *Tilton*[8] "with admittedly religious functions but whose predominant higher education mission is to provide their students with a secular education[,]" Davidson College is primarily an educational institution with well-established principles of academic freedom and religious tolerance. *Id.* at 687, 29 L. Ed. 2d at 804. As set forth in its Statement of Purpose, Davidson College's mission is not religious indoctrination but rather to "assist students in developing humane instincts and disciplined and creative minds for lives of leadership and service[.]"

We thus acknowledge the important distinction between an institution with religious influence or affiliation and one that is

---

8. *Tilton* involved four church-related colleges and universities in Connecticut: Sacred Heart University, Annhurst College, Fairfield University, and Albertus Magnus College. *Id.* at 676, 29 L. Ed. 2d at 797.

pervasively sectarian. Nonetheless, we further recognize that our unanimous decision will not confer on Davidson College an appeal as a matter of right to our Supreme Court.[9] Accordingly, should Davidson College seek discretionary review of this decision by our Supreme Court, we urge our Supreme Court to grant such review, which will be without the constraints placed upon this Panel by *Pendleton* and *Jordan*.[10]

Reversed.

Judges STROUD and BEASLEY concur.

Judge WYNN concurred in this opinion prior to 9 August 2010.

9. *Compare* N.C. Gen. Stat. § 7A-30 (2) (2007) (dissenting opinion of the N.C. Court of Appeals allows appeal as a matter of right to the N.C. Supreme Court), *with Hendrix v. Alsop*, 278 N.C. 549, 554, 180 S.E.2d 802, 806 (1971) ("[T]he General Assembly of North Carolina intended to insure a review by the Supreme Court of questions on which there was a division in the intermediate appellate court; no such review was intended for claims . . . on which that court rendered unanimous decision.").

10. While *Pendleton* and *Jordan* remain binding on this Court, we note that both decisions were rendered prior to the passage of § 74G, one of the stated purposes of which is to "assure, to the extent consistent with the State and federal constitutions, that [police] protection is not denied to students, faculty, and staff at private, nonprofit institutions of higher education originally established by or affiliated with religious denominations." *See* N.C. Gen. Stat. § 74G-2 (2009).